## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES DARBY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-13900** |
| **DARREL VANNOY, WARDEN** | **SECTION: "J"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, James Darby, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    On April 7, 2016, Darby was charged by bill of indictment with second-degree murder of Tracey Marshall in violation of La. Rev. Stat. § 14:30.1.[1]    On April 25, 2016, defense counsel filed motions to suppress the evidence, Darby's statement to police, and his identification.[2]    On September 9, 2016, after a hearing,

---

[1] State Rec., Vol. 1 of 6, Bill of Indictment, 4/7/16.

[2] State Rec., Vol. 1 of 6, Motion to Suppress the Identification, 4/25/16; Motion to Suppress the Confession, 4/25/16; Motion to Suppress the Evidence, 4/25/16.

the trial court denied the motions to suppress.[3]    On February 18, 2017, after a five-day trial,

a jury found Darby guilty as charged.[4]    The trial court denied Darby's motions for new trial

and post-verdict judgment of acquittal[5]    The trial court sentenced him to life imprisonment

at hard labor without the benefit of probation, parole or suspension of sentence.[6]    The court

denied Darby's motion to reconsider sentence.[7]

On direct appeal, Darby, through counsel, asserted that insufficient evidence

supported his conviction.[8]    On November 15, 2017, the Louisiana Fifth Circuit Court of

Appeal affirmed Darby's conviction and sentence.[9]    Darby did not seek discretionary

review of his direct appeal in the Louisiana Supreme Court.

On October 22, 2018, Darby filed an application for post-conviction relief with the

state district court.[10]    In that application, he asserted: (1) his rights were violated when he

was denied the right to testify at trial; (2) ineffective assistance of counsel when counsel

refused to allow petitioner to testify; (3) violation of his Fourth Amendment right to be free

---

[3]  State Rec., Vol. 1 of 6, Minute Entry, 9/9/16; State Rec., Vol. 3 of 6, Transcript of Hearing, 9/9/16.

[4]  State Rec., Vol. 1 of 6, Minute Entry, 2/14/17; Minute Entry, 2/15/17; Minute Entry, 2/16/17; Minute Entry, 2/17/17; Minute Entry, 2/18/17; Verdict, 2/18/17; State Rec., Vol. 3 of 6, Trial Transcript, 2/14/17; Trial Transcript 2/15/17; State Rec., Vol. 4 of 6, Trial Transcript (con't), 2/15/17; Trial Transcript, 2/16/17; State Rec., Vol. 5 of 6, Trial Transcript (con't), 2/16/16; Trial Transcript, 2/17/17; Trial Transcript, 2/18/17

[5]  State Rec., Vol. 1 of 6, Motion for Post-Verdict Judgment of Acquittal, 2/21/17; Motion for New Trial, 2/21/17; Minute Entry, 2/21/17; State Rec., Vol. 5 of 6, Sentencing Transcript, 2/21/17.

[6]  State Rec., Vol. 1 of 6, Minute Entry, 2/21/17; Commitment Order, 2/24/17; Sentencing Transcript, 2/21/17.

[7]  State Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 2/21/17; Order, 3/2/17.

[8]  State Rec., Vol. 5 of 6, Appeal Brief, 17-KA-261, 6/5/17.

[9]  *State v. Darby,* 17-KA-261 (La. App. 5 Cir. 11/15/17), 232 So.3d 1261; State Rec., Vol. 5 of 6.

[10]  State Rec., Vol. 1 of 6, Uniform Application for Post-Conviction Relief filed October 29, 2018.

from illegal searches; and (4) the cumulative effect of the errors raised denied him a fundamentally fair adversarial proceeding. He also submitted a notice of intent to amend or supplement his application.[11] On December 11, 2018, the state district court found that claims one and three were procedurally barred under La. Code Crim. P. arts. 930.4(B) and/or (C) because they were not raised in the proceedings leading up to the convictions or on appeal, claim two was contradicted by the record, and claim four was insufficient to warrant post-conviction relief.[12]

Darby filed an application for writ with the Louisiana Fifth Circuit Court of Appeal.[13] The Louisiana Fifth Circuit denied Darby's writ application on February 7, 2019.[14] On November 12, 2019, the Louisiana Supreme Court denied Darby's related writ petition finding that petitioner failed to show he received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984), and he failed to satisfy his post-conviction burden of proof as to the remaining claims, citing La. Code Crim. P. art. 930.2.[15]

In the meantime, Darby filed a second application for post-conviction relief on January 2, 2019.[16] In his second petition, he claimed insufficiency of the evidence and ineffective assistance of appellate counsel for failure to file a writ application with the

---

[11] State Rec., Vol. 1 of 6, Notice of Intent to Supplement, 10/29/18.

[12] State Rec., Vol. 2 of 6, State District Court Order denying post-conviction relief, 12/11/18.

[13] State Rec., Vol. 6 of 6, Fifth Circuit Writ Application, 19-KH-6, 1/7/19.

[14] *Darby v. State of Louisiana.*, 19-KH-6 (La. App. 5 Cir. 2/7/19) (unpublished); State Rec., Vol. 6 of 6,.

[15] *State v. Darby*, 2019-KH-0410 (La. 11/12/19), 282 So.3d 220 (per curiam); State Rec., Vol. 6 of 6.

[16] State Rec., Vol. 2 of 6, Uniform Application for Post-Conviction Relief and Successive Application for Post-Conviction Relief filed January 15, 2019.

Louisiana Supreme Court after the Louisiana Fifth Circuit denied his direct appeal and for failing to raise other meritorious claims on appeal.    On January 25, 2019, the state district court denied Darby's petition as successive.[17]    On February 26, 2019, the Louisiana Fifth Circuit denied his related writ application finding the application for post-conviction relief was in fact successive pursuant to La. Code Crim. P. 930.4(E) and that there was no basis to disturb the state district court ruling.[18]   On November 12, 2019, the Louisiana Supreme Court denied Darby's related writ application finding he previously exhausted his right to state collateral relief.[19]

On November 25, 2019, Darby filed the instant application for habeas corpus relief.[20] In that application, Darby claims (1) insufficient evidence; (2) denial of the right to testify at trial; (3) he was denied effective assistance of counsel when counsel refused to allow him to testify; (4) illegal search and seizure; and (5) cumulative error.

The State concedes that Darby's petition is not successive and that the federal application is timely.    It claims that Darby's first, second, fourth and fifth claims are procedurally defaulted, and that his ineffective assistance of counsel claim should be dismissed on the merits.[21]    It alternatively contends that Darby's fourth claim is barred from review by *Stone v. Powell*, 428 U.S. 465 (1976), as Darby had an opportunity to raise any alleged violations of his Fourth Amendment rights in the state courts.    Darby filed a

---

[17]  State Rec., Vol. 2 of 6, State District Court Order denying post-conviction relief, 1/25/19.

[18]  *Darby v. Louisiana*, 19-KH-65 (La. App. 5 Cir. 2/26/19) (unpublished); State Rec., Vol. 6 of 6.

[19]  *Darby v. Louisiana*, 2019-KH-0047 (La. 11/12/19) 282 So.3d 232; State Rec., Vol. 6 of 6.

[20]  Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus signed November 25, 2019.

[21]  Rec. Doc. 12.

traverse in which he claims he was unable to exhaust his insufficiency-of-the-evidence claim

because he did not have access to his property or legal documents because they were lost by

security and that his appellate counsel was ineffective on direct appeal.[22]    He asserts claims

two, four, and five are not procedurally defaulted because the Louisiana Supreme Court

denied them pursuant to La. Code Crim P. art. 930.2.    He asserts his fourth claim is based

on new constitutional law that was not available prior to post-conviction relief.    Finally, he

reiterates that his counsel prevented him from testifying at trial.

## Facts

The following facts were established at trial and summarized by the Louisiana Fifth

Circuit Court of Appeal:

> At approximately 9:40 p.m. on the evening of December 13, 2015,
> Deputy Henry Dejean of the Jefferson Parish Sheriff's Office responded to a call
> at 2409 Avenue Mont Marte in Terrytown, Louisiana, of shots fired in the area.
> Deputy Dejean canvassed the area where he was told the gunshots had
> originated, but due to inclement weather, could not locate any evidence of a
> shooting.    The following morning, the victim Tracey Marshall's neighbor,
> Kalie Alberti, called the police after she observed Ms. Marshall's head hanging
> out of the shattered driver's-side window of her vehicle in the parking lot of
> their condominium complex.
> Ms. Marshall, who was employed by the Jefferson Parish Sheriff's Office
> as a deputy, had been in a long-term relationship with defendant before their
> break-up in November of 2015.    As a result of their break-up, Ms. Marshall
> moved out of defendant's residence in New Orleans and into a condominium
> next door to Ms. Alberti.    Ms. Alberti recalled that a few days before Ms.
> Marshall's murder, she received a phone call from defendant, who asked her
> whether she had seen Ms. Marshall because he had been unable to reach her.
> Defendant then told Ms. Alberti that he believed Ms. Marshall was seeing
> someone else based on his seeing a silver Expedition parked in the parking lot
> of Ms. Marshall's condominium.    Ms. Alberti told defendant that the
> Expedition belonged to her (Ms. Alberti's) boyfriend and not to Ms. Marshall.
> Defendant concluded their conversation by explaining to Ms. Alberti that Ms.
> Marshall "owed" it to him to at least answer his phone call.    Based on the
> information Ms. Alberti provided, defendant was developed as a suspect in Ms.

---

[22] Rec. Doc. 13.

Marshall's murder.

Jefferson Parish Sheriff's Office Deputy Ian Donahue was the first officer to arrive on the scene of the homicide. Upon arrival, Deputy Donahue discovered that Ms. Marshall's car window had been shattered and that she had been shot.[1]    Dr. Susan Garcia, an expert in the field of forensic pathology, conducted an autopsy on Ms. Marshall.    Dr. Garcia testified that the cause of Ms. Marshall's death was multiple gunshot wounds, and the manner of death was classified as a homicide.    Dr. Garcia noted five separate entrance wounds located on various parts of the victim's body, including her chin, the left side of her arm, the left side of her head, and her upper back.    Further, based on the imprints on Ms. Marshall's chin, Dr. Garcia opined that she was likely turned to her left, as if looking out of the window, when the first shot was fired, the imprints having been caused by the shattered window glass.

[1]Deputy Donahue recalled having met Ms. Marshall on a previous occasion with regard to a battery complaint she wished to lodge against defendant on October 17, 2010, when defendant slapped her across the face after taking her phone and accusing her of having an affair with another man.

Deputy Donahue secured the scene of the homicide and began searching for evidence.    An empty black gun holster was found a block away in a neighbor's yard and was submitted for DNA analysis, but had insufficient DNA for comparison.    Detective Thomas Gai also participated in the recovery of evidence from the scene.    A series of eight .45–caliber casings located near Ms. Marshall's vehicle, a projectile located next to a nearby dumpster, two projectiles located inside Ms. Marshall's vehicle, and Ms. Marshall's fully loaded service weapon were recovered, confirming that she had not fired her weapon at the time she was shot.    Two cellular phones belonging to Ms. Marshall were also recovered.    It was determined that the .45–caliber casings had been fired from the same weapon and were consistent with a Glock automatic pistol.    The projectiles were further found to be consistent with .45–caliber class ammunition, and the gun holster discovered in the neighboring yard was determined to be capable of fitting a Glock .45–caliber pistol.    Detective Gai testified that there was damage to the driver-side window, consistent with a projectile entering the window, and several bullet holes found inside the vehicle, which were consistent with gunshot rounds having been fired into the vehicle from the driver's side and exiting on the passenger side.

A neighbor, Gary Barnes, told the police that he had heard a series of gunshots around 9:30 p.m. on the night of December 13, 2015.    When he glanced out of his window, he saw a vehicle cross his driveway at a high rate of speed, disregarding the posted stop sign.    He described the vehicle as a four-door medium-sized vehicle, dark in color, but that he could not see the driver.

The day following Ms. Marshall's murder, her boyfriend, Gerald Francis, contacted the Jefferson Parish Sheriff's Office after learning of her death. Pursuant to an interview with Mr. Francis, it was learned that Ms. Marshall and Mr. Francis had been dating for approximately two months prior to her

murder.    Around 6:15 p.m. on December 13, 2015, Ms. Marshall and Mr. Francis met at the Walgreens on St. Charles Avenue in New Orleans, each in their own vehicles.    From there, they walked across the street to Houston's Restaurant for dinner, and then proceeded to the French Quarter where they listened to live music before concluding the evening at Club Good Times II. Mr. Francis then drove Ms. Marshall to her vehicle at the Walgreens where they parted ways.    While on his way home, Mr. Francis spoke to Ms. Marshall on the phone until she reached her home in Terrytown.    At that point, because it was raining heavily, Ms. Marshall advised Mr. Francis that she was going to wait in her car until the rain stopped.    They were still talking when during their conversation, Ms. Marshall suddenly said "boy" as if "somebody scared her," and then her phone went dead.

Mr. Francis stated that he attempted to call Ms. Marshall back several times, and sent her text messages  to see if everything was okay, but received no response.    The following morning around 6:00 a.m., Mr. Francis again attempted to call and text Ms. Marshall as they typically spoke during Ms. Marshall's  drive to work, but again he received no response.[2]    Later that day, Mr. Francis was watching the news when he learned that Ms. Marshall had been murdered.    It was at that time that he contacted the police.

[2] Detective Donahue obtained Mr. Francis' consent to search his cellular phone for text messages.    The phone calls and text messages sent by Mr. Francis to Ms. Marshall on the evening of her murder and the following morning were admitted into evidence, corroborating his testimony.

Elizabeth Memtsas, a friend of Ms. Marshall, recalled a phone conversation she had with Ms. Marshall  one day in 2015, where Ms. Marshall was very upset and voiced her desire to leave defendant, but stated that she was unable to do so because defendant would never allow it due to his jealous nature.    She further recollected a time in 2015 when she and Ms. Marshall were shopping and noticed that defendant had been following them.    She stated that Ms. Marshall told her to "stay calm," then "exchanged words" with defendant before he drove off.    In another instance, Ms. Memtsas heard defendant arguing with Ms. Marshall while he was on speakerphone  and told Ms. Marshall that she needed to come back to him or else he would file false claims against  her with the Sheriff's Office's Internal Affairs Department to ensure the loss of her job.

Gary Mitchell, a long-time friend of defendant, stated that he believed defendant and Ms. Marshall's  November 2015 break-up was amicable and recalled that defendant helped Ms. Marshall move out of his house and into her condominium.    Defendant had explained to Mr. Mitchell that he and Ms. Marshall were separating  for a while and that they planned on using their time apart to get their finances in order.    As time passed, Mr. Mitchell explained that Ms. Marshall stopped answering defendant's phone calls and text messages  and that defendant had wanted to reconcile their relationship because he still loved her.    Mr. Mitchell advised defendant to leave her alone and give her some space, to which defendant stated, "[d]on't be surprised if she wind up dead."    Defendant further told Mr. Mitchell that he thought Ms.

Marshall had "used" him and that "he wasn't doing that no more ... and that he hoped she didn't do him wrong," or "you'd read about her."    On cross-examination, Mr. Mitchell explained that he could not remember the exact day the statement was made, but believed it was within a month before Ms. Marshall was killed.    He further stated that he did not respond to defendant's statement because he knew defendant loved her and that his heart was broken.

Mr. Mitchell also testified that on the morning of December 14, 2015, defendant texted him asking if he could borrow a car diagnostic tool to clear a code on a car he was working on.[3]    When he arrived at his house to pick the tool up, defendant advised him that he was leaving for Alabama the next day to renew his car registration.    Mr. Mitchell offered to go with him, but defendant told him "no," explaining that he was going to stay for a few days.

[3] Betty Ateman, defendant's aunt, testified that defendant had been working on her four-door Nissan Altima on December 13, 2015.    She further testified that defendant returned her car to her on December 14, 2015, and that pursuant to the investigation of this case, the police came to her house to take pictures of her car.

Christopher Boykin, also a long-time friend of defendant, testified that he knew defendant and Ms. Marshall were engaged, but then broke up when things did not work out.    He recalled that defendant was "agitated" after the break-up because Ms. Marshall would not answer his phone calls, and that defendant felt "played."    Mr. Boykin testified that defendant was aggravated to the point where he said, "if she keep messing with him like that, they will find her stinking," which Mr. Boykin believed to mean "dead."    Mr. Boykin explained that he did not think much of defendant's comment because "it was just guys talking."

Mr. Boykin saw defendant on December 14, 2015—the day following the murder—around 3:30–4:00 p.m., at which time defendant informed him that he was going to Alabama to take care of some paperwork for his car.    On that same day, around 4:30–5:00 p.m., Mr. Boykin learned that Ms. Marshall had been murdered.    He then called defendant, who was on his way to Alabama, and told him that Ms. Marshall had been found dead in her car. Defendant asked Mr. Boykin if he was serious, but Mr. Boykin thought defendant would have been "more distraught."    Mr. Boykin however was unable to continue their conversation because defendant's phone cut out, and defendant never called him back.

Tanya Brumfield, a friend of defendant's father and an acquaintance of Ms. Marshall, also recalled that near the time of Ms. Marshall's murder, defendant called her to inquire if she could call Ms. Marshall on a three-way phone call for him because she had not been answering his calls.    Ms. Brumfield told defendant she was not comfortable placing the call because she was aware they had just broken up, which prompted defendant to text Ms. Brumfield "who's side you on?    You know what she did me?    She messed me over."

An exigent circumstances request form was executed by Jefferson Parish Sheriff's Detective Donald Zanotelli for defendant's cell phone records.

Based on these records, Detective Zanotelli was able to determine defendant's location and provided the information to the U.S. Marshals who ultimately apprehended defendant in Alabama.[4]    A search warrant for defendant's residence was also obtained and several of Ms. Marshall's personal belongings were seized.

[4] Defendant's ex-girlfriend, Nancy Jemison, testified that on December 15, 2015, defendant showed up at her house in Tuscaloosa, Alabama, unannounced and looking "rough." A close friend of defendant, David Rhea, also testified that on December 11, 2015, he spoke to defendant and invited him to Tuscaloosa, Alabama, for a billiards tournament, an invitation defendant declined.    However, on December 14, 2015, defendant contacted Mr. Rhea to inform him that he was coming to Tuscaloosa and needed his assistance in finding the office for vehicle registration.    Mr. Rhea explained that on that same date, defendant stayed at his house, where defendant informed Mr. Rhea that he and Ms. Marshall had broken up.    No mention of Ms. Marshall's murder was made.

Detective Gabriel Gabriel Faucetta of the Jefferson Parish Sheriff's Office testified that analyses of Ms. Marshal's and defendant's cell phones were conducted.    Based on the analysis of defendant's cell phone, a text message sent by defendant to his son, dated December 6, 2015, was retrieved, which stated, "I real [sic] need that heater.    I'm going go hunting myself."[5] Testimony from long-time friends Mitchell and Boykin, as well as defendant's recorded statement, established that hunting was not one of defendant's hobbies.

[5] There was no testimony presented regarding the meaning of the word "heater"; however, in closing, the State argued that "heater" was a word used for "firearm."

A web history analysis of defendant's cell phone also showed that defendant accessed an application called "Android Lost" over three hundred times to determine Ms. Marshall's location.    Additionally, certain extractions from defendant's cell phone revealed that on the afternoon of Ms. Marshall's murder, a search was entered into defendant's phone for a latitude and longitude coordinate matching the location of Ms. Marshall's residence. Also, at approximately 8:21 p.m. on December 13, 2015, it was established that defendant's cell phone accessed Google Maps to pin point the location of the Walgreens and Houston's Restaurant visited by Ms. Marshall on the night she was murdered.    And an analysis of the cell phone tower information obtained from the use of defendant's phone on the night of Ms. Marshall's murder placed defendant's cell phone near the location where Ms. Marshall was on her date with Mr. Francis, then near Ms. Marshall's residence at the time of her death, and finally traveling back over the Crescent City Connection Bridge towards defendant's residence at a time after the murder.[6]

[6] Defendant admitted in his statement to the police that he had his cellular phone with him the entire night leading up to and after Ms. Marshall's murder.

After his arrest, defendant gave a statement to the police in which he stated that he was driving his aunt's green Nissan Altima at approximately 8:00 p.m. down St. Charles Avenue when he saw Ms. Marshall with another man.    He then observed Ms. Marshall get into her truck at the Walgreens on St. Charles.    He further admitted that upon seeing this, he drove to the Westbank where he then decided against driving all the way to Ms. Marshall's house, and instead, elected to stop at a local Westbank SnoBall stand before

turning around and driving home.    However, defendant later admitted that he did in fact drive near Ms. Marshall's residence, where he parked in a neighboring driveway, exited his vehicle, but then decided against approaching Ms. Marshall and instead drove home, past Mr. Barnes' residence. The driveway where defendant admitted he parked was approximately six car lengths from Ms. Marshall's vehicle at the time of her death.

The State presented prior convictions and bad acts committed by defendant.    The first incident occurred on April 2, 2011, when Ms. Marshall went to the police station to report frightening text messages she had received from defendant, her ex-boyfriend at the time.    In the text messages, summarized by Agent Sean Williams of the Jefferson Parish Sheriff's Office, defendant wrote that he was "getting ready to self-destruct," that he was "very angry and upset" with Ms. Marshall, that he was on his way to Ms. Marshall's house, and that he was "prepared to go to jail and suffer the consequences that his actions would cause."    On May 6, 2011, defendant was placed under arrest for cyberstalking and making threatening phone calls to Ms. Marshall. The second documented incident occurred on April 12, 2011, when Ms. Marshall filed a police report, stating that defendant had broken into her residence armed with a firearm and would not leave when asked.

The State also presented evidence regarding an April 30, 2011 phone call defendant made to Ms. Marshall in which he asked why she was pressing charges against him, and an incident on July 27, 2011, where Ms. Marshall filed a complaint asserting that defendant had made harassing phone calls to her at her place of employment, again urging Ms. Marshall to drop the charges against him.    As a result, a protective order was issued, prohibiting defendant from having any contact with Ms. Marshall.

Defendant pled guilty to cyberstalking Ms. Marshall in 2011 and to a separate incident for unauthorized entry of an inhabited dwelling in 1992 in which he broke into an ex-girlfriend's house and, after two failed attempts at firing his gun at his ex-girlfriend's new boyfriend, he struck the boyfriend with his firearm causing injury.[23]

### Preliminary Review – Procedural Default

The Court first considers the State's assertion that four of Darby's habeas claims are procedurally barred from federal review.    The State argues that as to the first claim, Darby failed to assert in in the state's highest court on direct appeal, and that when he raised it in his second application for post-conviction relief, the state courts found the application to be

---

[23] *State v. Darby*, 17-KA-261 (La. App. 5 Cir. 11/15/17), 232 So.3d 1261, 1263-1268; State Rec., Vol. 5 of 6.

successive.    As to claims two, four, and five, the State claims that the Louisiana Supreme Court disposed of them on state procedural grounds.

The state district court found claims two and four procedurally barred pursuant to La. Code Crim P. arts. 930.4(B) and (C).[24]    With regard to claim five, it found it to be without merit.[25]    The Louisiana Fifth Circuit similarly found claims two and four procedurally barred under La. Code Crim P. art. 930.4.[26]    It found claim five was not cognizable under La. Code Crim P. art. 930.3.[27]    The Louisiana Supreme Court did not adopt those findings but rather found that Darby failed to meet his post-conviction burden of proof as to these three claims, citing La. Code Crim P. art. 930.2.[28]

Article 930.2 provides that "[t]he petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted."    The State argues that this provision has been cited to show a petitioner's failure to carry this burden both on the merits and on procedural grounds.    *See Woodfox v. Cain*, 609 F.3d 774, 796 (5th Cir. 2010).    Courts, however, have found that the Louisiana Supreme Court's citation to La. Code Crim. P. art. 930.2 that does not also include a citation to any other grounds is a decision on the merits and does not constitute a state procedural bar.    *See Cotton v. Tanner*, 18-539-BAJ-RLB, 2019 WL 7197668, at *4 (M.D. La. Nov. 6, 2019), *adopted*, 2019 WL 7195609 (M.D. La. Dec. 26, 2019); *Mincey v. Cain*, 14-cv-782, 2016 WL 1586835, at *6 (W.D. La. Jan. 26, 2016),

---

[24] State Rec., Vol. 2 of 6, State District Court Order denying post-conviction relief, 1/25/19, pp. 1-3.

[25] *Id.*, at p. 3.

[26] *Darby v. Louisiana*, 19-KH-65 (La. App. 5 Cir. 2/26/19) (unpublished); State Rec., Vol. 6 of 6.

[27] *Id.*; State Rec., Vol. 6 of 6.

[28] *Darby v. Louisiana*, 2019-KH-0047 (La. 11/12/19) 282 So.3d 232; State Rec., Vol. 6 of 6.

*adopted*, 2016 WL 1545791 (W.D. La. Apr. 4, 2016); *Brydels v. Warden, Louisiana State Penitentiary*, No 13-0094, 2014 WL 2735887, at *4 (W.D. La. Jun. 16, 2017); *Gallow v. Cooper*, Civ. Action No. 04-1905, at *8 (W.D. La. Jul. 30, 2010), *adopted*, 2010 WL 3522481 (W.D. La. Aug. 31, 2010), *aff'd*, 505 F. App'x 285 (5th Cir. 2012).

In this case, the Louisiana Supreme Court only cited to La. Code Crim. P. art. 930.2 As a result, the Court rejects the State's position that claims two, four, and five are procedurally barred, and will address the merits of those claims.

As for claim one, Darby, through counsel, raised insufficiency of the evidence on direct appeal, and the Louisiana Fifth Circuit found the issue to be without merit.[29]    Darby did not file a writ application with the Louisiana Supreme Court, nor did he raise the issue in his first application for post-conviction relief.    Rather, he raised the issue of insufficient evidence in his second application for post-conviction relief and claimed ineffective assistance of appellate counsel for failing to raise the issue before the Louisiana Supreme Court.    The state district court found the application successive pursuant to La. Code Crim P. art. 930.4(E).[30]    The Louisiana Fifth Circuit found no basis to disturb the ruling of the state district court.[31]    The Louisiana Supreme Court denied the writ application finding that Darby "previously exhausted his right to state collateral review."[32]

---

[29]  *State v. Darby,* 17-KA-261 (La. App. 5 Cir. 11/15/17), 232 So.3d 1261, 1268-1270; State Rec., Vol. 5 of 6.

[30]  State Rec., Vol. 2 of 6, State District Court Order denying post-conviction relief, 1/25/19.

[31]  *Darby v. Louisiana*, 19-KH-65 (La. App. 5 Cir. 2/26/19) (unpublished); State Rec., Vol. 6 of 6.

[32]  *Darby v. Louisiana*, 2019-KH-0047 (La. 11/12/19) 282 So.3d 232; State Rec., Vol. 6 of 6.

While the Louisiana Supreme Court did not specifically cite to the state law that procedurally barred Darby's insufficient evidence claim, the language it used has been found to "clearly rel[y] on Louisiana Code of Criminal Procedure article 930.4(E), which provides, '[a] successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.' " *Reaux v. Cain*, Civ. Action No. 17-8690, 2019 WL 1326909, at *2 (E.D. La. Mar. 25, 2019), *appeal dismissed*, No. 19-30319, 2019 WL 5448597 (5th Cir. May 31, 2019)

As the United States Fifth Circuit Court of Appeal has recognized, Louisiana Code of Criminal Procedure article 930.4(E) constitutes an independent and adequate state-law procedural ground to support a procedural bar to review. *Ardison v. Cain*, 264 F.3d 1140, 2001 WL 822445, at *4–5 (5th Cir. 2001); *Besse v. Tanner*, Civ. Action No. 16-2992, 2017 WL 2936311, at *8 (E.D. La. July 7, 2017); *Bell v. Baton*, Civ. Action No. 11-0304, 2012 WL 5364239, at *3 (M.D. La. Sep. 24, 2012), *adopted*, 2012 WL 5364237, at *1 (M.D. La. Oct. 31, 2012) (concluding that Article 930.4(E) has been found to be an adequate, independent state ground for rejecting a petition for post-conviction relief, and the federal courts have relied upon this statute in finding claims to be technically exhausted but procedurally defaulted).

Because the last reasoned state-court decision rested expressly upon an independent and adequate state rule of procedural default, this Court may not review Darby's claim of insufficient evidence unless petitioner demonstrates cause for the default and actual prejudice or a fundamental miscarriage of justice. *Glover v. Cain*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731–32); *Amos v. Scott*, 61 F.3d at 338–39 (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989) and *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). Darby has demonstrated neither.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The mere fact that a petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486. Darby asserts ineffective assistance of appellate counsel in failing to file a writ application to the Louisiana Supreme Court after the Fifth Circuit denied the issue on direct appeal as cause for his procedural default of his insufficient evidence claim. Claims of counsel ineffectiveness, can in some circumstances serve as a cause to overcome a procedural bar. *Id.* However, an ineffective assistance of counsel claim cannot do so if it is itself procedurally defaulted. In this case, Darby's claim of ineffective assistance of appellate counsel is similarly procedurally barred because it too was raised for the first time in his successive application. Furthermore, Darby was not entitled to assistance of counsel beyond the initial appellate level. *See Ross v. Moffitt*, 417 U.S. 600, 614, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *Clark v. Johnson*, 227 F.3d 273, 283 (5th Cir.2000) ("[T]he Supreme Court has not extended the right of counsel to discretionary review."); *State v. Thomas*, 750 So.2d 1114, 1127 (La.Ct.App.1999) (defendant has "a right to court appointed counsel on a first direct appeal as of right"); *see also* La. Code Crim. P. art 912.1(B)(1) (providing right of appeal to court of appeal in criminal cases). As Darby has made no showing of "cause and prejudice" in connection with the procedural default of his ineffective assistance of appellate counsel claim, the Court finds that said claim cannot be used as a basis for cause in Darby's effort to overcome the procedural default of his insufficient evidence claim.

Darby also claims as cause for his procedural default that he did not have access to his property or legal documents because they were lost by security and that he diligently filed his insufficient-evidence claim as soon as he received the documents.[33]    Nothing in the record supports this claim.    Initially, Darby was able to timely file his first application for post-conviction relief in which he raised four claims.[34]    The Statement of the Case and the Statement of Facts included in his supporting brief are nearly identical to those included in his counseled direct appeal brief to the Louisiana Fifth Circuit.[35]    Furthermore, the insufficiency-of-the-evidence argument included in the brief supporting his second application for post-conviction relief filed several months after his original application for post-conviction relief is identical to the direct appeal brief.[36]    While Darby filed a notice of intent to amend or supplement his original application for post-conviction relief, which was denied, he did not claim that his legal documents had been lost, thereby preventing him from urging other arguments; rather he stated he intended to "gather other information and research which may accumulate to a credible constitutional issue which may be made part of the instant petition."[37]

Even when he filed his second post-conviction application for relief, he did not claim he had been missing legal documents which had prevented him from raising the

---

[33] Rec. Doc. 13, p. 4.

[34] State Rec., Vol. 1 of 6, Memorandum of Law and Facts in Support of an Application for Post Conviction Relief filed October 29, 2018.

[35] *Compare* State Rec., Vol. 1 of 6, Memorandum of Law and Facts in Support of an Application for Post Conviction Relief filed October 29, 2018 *with* State Rec., Vol. 5 of 6, Appeal Brief, 17-KA-261, 7/5/17, pp. 2-8.

[36] *Compare* State Rec., Vol. 2 of 6, Successive Application for Post-Conviction Relief filed January 15, 2019, pp. 2-7 *with* State Rec., Vol. 5 of 6, Appeal Brief, 17-KA-261, 7/5/17, pp. 8-14.

[37] State Rec., Vol. 1 of 6, Notice of Intent to Amend to Amend or Supplement, 10/2918; Order, 11/5/18.

insufficiency-of-the-evidence argument earlier; rather, he claimed ineffective assistance of appellate counsel in failing file a writ application to the Louisiana Supreme Court after the Fifth Circuit denied his direct appeal.[38]    In his related writ application to the Fifth Circuit, he falsely claimed that he had asked the state district court for permission to supplement as soon as he could obtain prior appellate filings.[39]    Again, at no point did Darby ask for *permission* from the state district court to supplement his application, nor did he ever mention a lack of access to his appellate filings.    In his petition to the Louisiana Supreme Court, he claimed he had been in administrative segregation, did not have his legal papers, had filed the initial application to stop his federal time from running, and that he filed his successive application as soon as he could obtain his prior appellate filings.[40]

Here, Darby does <u>not</u> allege he was in administration segregation, but, as previously stated, claims the prison officials lost his legal documents.[41]    He presents no evidence supporting this claim.    Nor does he explain when the materials were lost.    Furthermore, despite the alleged separation from his legal papers, he was able to file his first application for post-conviction relief, copying word-for-word large sections of the alleged missing direct appeal brief and raising four claims.    He has not explained how he was able to copy sections of his direct appeal brief, but was incapable of raising his insufficiency-of-the-evidence claim (which was the only issue on the direct appeal brief) in his first application for post-

---

[38] State Rec., Vol. 2 of 6, Successive Application for Post-Conviction Relief filed January 15, 2019, pp. 7-8.

[39] State Rec., Vol. 6 of 6, Application for Writ of Review, 19-KH-65, 2/19/19, .p.1.

[40] State Rec., Vol. 6 of 6, Petition for writ of Certiorari and Review, 3/21/19, p. 3.

[41] Rec. Doc. 13, p. 4.

conviction relief.    Moreover, he has not explained how he was prevented from asserting a claim of insufficiency of the evidence because of his alleged lost legal documents.    Darby was present at trial.    He was well aware of the evidence presented and he had five pages of facts in his initial post-conviction application.    For these reasons, Darby fails to show that his "lost" legal documents were cause to excuse his procedural default.

For the foregoing reasons, Darby has not offered any cause for the default which would excuse the procedural bar imposed by the state courts.    "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."    *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.    *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).    To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."    *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Glover*, 128 F.3d at 902.    To satisfy this standard, a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."    *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).    To show factual innocence, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.    *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997) (actual-innocence factor requires a showing by clear and convincing evidence that,

"but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").

Darby points to no new evidence that would show his actual innocence of the crime for which he was convicted. Thus, he has failed to overcome the procedural bar to Claim One, and the foregoing claim should be dismissed with prejudice as procedurally barred.

## Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both. A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1) ] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state-court decision is

"contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S. Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1866 (2010) ( "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standard of review under Section 2254(d) and *Williams*, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts.    28 U.S.C. § 2254(d).    With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply.    *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).    Instead, the federal courts review those claims under pre-AEDPA de novo standards of review.    *Id*. at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

## Claims for Relief

A. *Denial of the Right to Testify (Claim Two) & Ineffective Assistance of Counsel (Right to Testify) (Claim Three)*

In Claims Two and Three, Darby claims that counsel denied him the right to testify in his own defense at trial despite Darby's expressed desire to do so.[42]    The state district court considered and rejected the claim Darby raised on post-conviction relief that trial counsel was ineffective for allegedly interfering with his right to testify at trial.    The district court found that his claim was contradicted by the record and that he failed to show that defense counsel interfered with his desire to testify.    The Louisiana Fifth Circuit Court of Appeal denied Darby's related writ application similarly finding that trial counsel advised Darby of the potential legal issues should he choose to testify, but maintained the decision was Darby's alone, the trial court advised Darby the decision to testify was his alone, and Darby

---

[42]  Rec. Doc. 3, pp. 35, 40-45.

decided not to testify.[43]     In the last reasoned opinion, the Louisiana Supreme Court denied

writs finding "Applicant fails to show that he received ineffective assistance of counsel under

the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674

(1984)."[44]     While both lower state courts found Darby's separate claim of the denial of the

right to testify was procedurally barred, as previously explained, the Louisiana Supreme

Court found he did not meet his burden of proof citing La. Code Crim P. art. 930.2.

A criminal defendant has a fundamental constitutional right to testify in his own

behalf at trial.     *See Rock v. Arkansas*, 483 U.S. 44, 49–52 (1987); *Bower v. Quarterman*, 497

F.3d 459, 473 (5th Cir.2007); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir.2001); *Jordan v.*

*Hargett*, 34 F.3d 310, 312 (5th Cir.1994).).     When, as here, the petitioner alleges that his

counsel, not the court or the State, prevented him from testifying, the United States Court of

Appeals for the Fifth Circuit has held that the " 'appropriate vehicle for such claims is a claim

of ineffective assistance of counsel.' "     *Sayre*, 238 F.3d at 634 (quoting *United States v..*

*Brown*, 217 F.3d 247, 258–59 (5th Cir. 2000); *accord United States v. Mullins*, 315 F.3d 449,

452 (5th Cir. 2002), *cert. den.*, 541 U.S. 1031 (2004).

A criminal defendant can only waive his right to testify if that waiver is knowing,

intelligent and voluntary.     *Bower*, 497 F.3d at 473 (citing *Emery v. Johnson*, 139 F.3d 191,

198 (5th Cir.1997)).     A violation of this right occurs only if the " 'final decision that [the

defendant] would not testify was made against his will.' "     *Emery*, 139 F.3d at 198 (quoting

---

[43]  *Darby v. State of Louisiana*, 19-KH-6 (La. App. 5 Cir. 2/7/19) (unpublished); State Rec., Vol. 6 of 6.

[44]  *State v. Darby*, 19-KH-0410 (La. 11/12/19), 282 So.3d 220; State Rec., Vol. 6 of 6.

*United States v. Teague*, 908 F.2d 752, 759 (11th Cir.1990), *reh'g granted*, 953 F.2d 1525 (11th Cir.), *cert. denied*, 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992)).

In order to prove ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984).    If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' "    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a

reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

Because the claims were adjudicated on the merits in state court, habeas relief is available only if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86 (2011). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted).

Here, the state-court decision rested in part on the fact that Darby's allegation, *i.e.*, that he expressed a desire to testify and counsel refused was unsubstantiated and conclusory. "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." *Turcios v. Dretke*, Civ. Action No. 97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)); *accord Jones v. Cain*, Civil Action No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, Civil Action No. 06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007). In addressing the need for a petitioner to substantiate a claim that he was denied the right to testify by his counsel, the United States Seventh Circuit Court of Appeals explained:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...

> [A] barebones assertion by a defendant, albeit made under oath, is
> insufficient to require a hearing or other action on his claim that his right to
> testify in his own defense was denied him. It just is too facile a tactic to be
> allowed to succeed. Some greater particularity is necessary—and also we
> think some substantiation is necessary, such as an affidavit from the lawyer
> who allegedly forbade his client to testify—to give the claim sufficient
> credibility to warrant a further investment of judicial resources in
> determining the truth of the claim.

*Underwood v. Clark*, 939 F.2d at 475-76.    The United States Fifth Circuit Court of Appeals

has cited favorably the rationale set forth in *Underwood* recognizing "[c]ourts have observed

that allowing a bare assertion of a right-to-testify violation to precipitate the further

investment of judicial resources is problematic."    *United States v. Martinez*, 181 F.3d 627,

628 (5th Cir. 1999) (quoting *Underwood*, 939 F.2d at 476) (a conclusory assertion by a

defendant that his right to testify was denied him is insufficient to require a hearing because

"[i]t just is too facile a tactic to be allowed to succeed").    Consequently, Darby's mere

assertion that defense counsel prohibited him from testifying at trial will not suffice to prove

counsel interfered with his right to testify.

Furthermore, the record does not reflect that Darby was denied the right to testify.

On several occasions, the state district court advised Darby that he had the right to testify

and that the ultimate decision whether to testify was Darby's alone.[45]    Prior to the

commencement of trial, and outside the presence of the jury, defense counsel stated that he

had spoken to Darby about testifying, and specifically stated:

> But I explained to him, should he testify, then he cannot in my opinion
> talk about character evidence as it relates to him because that might open the
> door to some of the other 404(B) that the Court excluded.    And I wanted to
> put that on the record, that I explained that clearly to him and I am not going

---

[45] State Rec., Vol. 3 of 6, Trial Transcript, pp. 9-11, 2/15/17; State Rec., Vol. 5 of 6, Trial Transcript, pp.
5-6, 2/18/17.

> to insist that he shouldn't testify, but that he can't testify about character in this case.[46]

Darby acknowledged that his counsel explained to him the perils and consequences if he should testify and that he understood.[47]    The state district court explained to Darby that he had the entire trial before he had to make a final decision whether to testify, and that the decision, which was Darby's decision alone, would be best made after hearing the state case and consulting with his attorney.[48]    Darby acknowledged that he understood.[49]

After the State presented its case-in-chief, the state district court placed Darby under oath and again advised him of his right to testify.[50]    The state district court again advised Darby that the decision to testify was his and his alone.[51]    Darby agreed that he had adequate time to consult with his attorney and that he had chosen not to testify.[52]    Given the record, Darby was fully aware that it was his decision whether to testify and chose not to do so.    Again, the only evidence offered is Darby's unsupported allegation in his memorandum in support as to what purportedly transpired between him and defense counsel.

Furthermore, Darby has not shown that counsel's advice against testifying was objectively unreasonable or resulted in prejudice.    A decision whether or not to put a

---

[46]  State Rec., Vol. 3 of 6, Trial Transcript, p. 10, 2/15/17

[47]  *Id.*, at pp. 10-11.

[48]  *Id.*, at p. 11.

[49]  *Id.*

[50]  State Rec., Vol. 5 of 6, Trial Transcript, pp. 5-6, 2/18/17.

[51]  *Id.*, at p. 6.

[52]  *Id.*, at p. 6.

criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight." *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985); *accord United States v. Mullins*, 315 F.3d at 453; *Amos v. Cain*, Civ. Action No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); *Curtis v. Cain*, Civ. Action No. 06-1676, 2008 WL 482849, at *10 (E.D. La. Feb. 13, 2008). Such a matter is inherently one of trial strategy, and federal habeas courts generally are not to second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

Counsel acts within the ambit of sound trial strategy to keep evidence of the defendants' credibility, or lack thereof, from the jury  Here, there is no evidence that defense counsel advised against testifying.  Rather, the evidence is that counsel advised that Darby could not testify about character.  Under the circumstances, that advice was objectively reasonable.  His counsel repeated on the record that Darby's testimony could have opened the door to matters that would be harmful to the defense, including some of the La. Code Crim. P. art. 404(B) evidence the state district court excluded as prejudicial[53], and would very likely would have undermined his own credibility.  Darby offers nothing to refute that defense counsel strategically considered the potential harm that plainly could outweigh any benefit his testimony might have provided the defense when he advised Darby about the perils of taking the stand, and that Darby decided at the time not to testify, accepting the learned advice of counsel that he now, in hindsight, believes regrettable.

---

[53] *See* State Rec., Vol. 3 of 6, Motion Hearing Transcript, 11/16/16; Notice of Intent to Introduce evidence of Other Acts, 2/8/14.

Moreover, *Strickland*'s prejudice prong requires a reasonable probability that but for counsel's advising him not to testify, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694–95.    Darby has not demonstrated that the outcome of the trial would have been any different but for counsel's decision to present a defense of failure to prove Darby's identity as a perpetrator beyond a reasonable doubt without Darby testifying at trial.

As the state courts reasonably concluded, Darby's allegations that defense counsel denied him the right to testify are unsupported.    He also has not established that counsel's advice regarding testifying was unreasonable or that the outcome of the trial would have been any different but for counsel's advising Darby about the perils of testifying at trial. For these reasons, Darby has not demonstrated that the state court's decision of his right to testify claim and rejecting the ineffective-assistance-of-counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law.

B.   *Illegal Search and Seizure (Claim Four)*

Darby claims that State's acquisition of his cell-site location information through exigent circumstances requests violated the Fourth Amendment.    He claims it was impossible for there to be full and fair consideration of the claim at the time of his trial because *Carpenter v. United States*, 138 S. Ct. 2206 (2018), holding that the government's acquisition of cell phone location records was a search under the Fourth Amendment requiring a warrant supported by probable cause unless an exception applies, was not decided until after the conclusion of his direct appeal.

Defense counsel moved to suppress the exigent circumstances requests to the cellular phone providers for several phone numbers for the victim and Darby.[54]   A hearing was held on September 9, 2016.[55]   Following the testimony from Detective Faucetta, Investigator Jones, Detective Zanotelli, Detective Aucoin, the state district court denied the motion to suppress.   Defense counsel did not raise the issue on direct appeal.

As the State correctly notes in its response, Fourth Amendment violation claims generally are not cognizable on federal habeas review.   In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."   *Id.* at 494 (footnote omitted); *see also Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002).   The *Stone* bar applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous. *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978).

A "full and fair" hearing as contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court.   *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986); *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977).   The "opportunity" for full and fair litigation exists as long as the state provides the petitioner with processes by which he can obtain full and fair consideration, without regard to whether he actually takes advantage of those processes.

---

[54]   State Rec., Vol. 1 of 6, Motion to Suppress the Evidence, 4/25/16.

[55]   State Rec., Vol. 3 of 6, Transcript of Hearing (9/9/16).

*Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978) ("An 'opportunity for full and fair litigation' means just that: an opportunity."); *see also Janecka*, 301 F.3d at 320.    "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, 577 F.2d at 1192.    "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone*." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980).

Thus, it is the <u>opportunity</u> to present a Fourth Amendment claim to the state courts that is the basis of the *Stone* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful.    *Janecka*, 301 F.3d at 320-21.    Even when a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone* bar to apply.    *Id.* at 320.

To obtain federal review and overcome the *Stone v. Powell* bar, Darby is required to prove that he had no meaningful opportunity for review of his Fourth Amendment claim in the state courts.    He has not met this burden.

Darby does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims.    On the contrary, he used that opportunity for review of such claims in the state district court pretrial.    In addition, this court has found that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v.*

*Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) (Duval, J.) (order adopting report and recommendation).

In the instant case, Darby asserted a Fourth Amendment claim in the state district court, where he was afforded an evidentiary hearing. He simply was not successful in obtaining relief. While he did not raise the issue on appeal, he had the opportunity to do so. Even if the state court erred in its disposition of the Fourth Amendment claim, the *Stone v. Powell* bar still applies, because Darby has not shown that Louisiana's processes routinely and systematically applied to prevent adjudication of Fourth Amendment claims. *See Williams*, 609 F.2d at 220; Cole, 548 F.2d at 1165. This Court's review of Darby's Fourth Amendment claim is barred by the doctrine under *Stone v. Powell*. Darby's claim must be dismissed for this reason.

Lastly, while Darby argues that the *Carpenter* decision was not issued until after his direct appeal, the United States Supreme Court did not declare *Carpenter* retroactive. Nor has any subsequent Supreme Court case done so. Thus, he is not entitled to habeas relief under *Carpenter*. *United States v. Narvaez*, No. 18 CV 3629, 2020 WL 3275734, at *5 (N.D. Ill. Apr. 13, 2020) (citing *United States v. Sandoval*, No. CR 16-060 WES, 2020 WL 374701, at *4 (D.R.I. Jan. 23, 2020)); *United States v. Shaw*, No. 12-20044-JWL, 2020 WL 1233751, at *3 (D. Kan March 13, 2020); *United States v. Davis*, 2019 WL 1584634, 1:13-cr-28, 2019 WL 1584634, at *2 (M.D. Pa. Apr. 12, 2019), *appeal filed*, 19-2039 (3rd Cir. May 8, 2019)

Because Darby was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, *Stone* bars this Court from considering that claim.

C. *Cumulative Error*

Darby's final argument is that he is entitled to relief when the errors in his case are considered cumulatively.    However, the United States Fifth Circuit Court of Appeals has long expressed its disfavor of such claims in federal habeas corpus proceedings. For example, the Fifth Circuit has noted:

> [Petitioner] finally asserts that even if none of his claims entitles him to relief individually, all of them collectively, do.    Habeas relief is available only where a prisoner is in custody in violation of the Constitution or of federal law. 28 U.S.C. § 2254.    [Petitioner] cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit.    We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.    Twenty times zero equals zero.

*Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987).

Nevertheless, the Fifth Circuit subsequently recognized such claims, albeit in a strictly narrow set of circumstances. The Fifth Circuit noted:

> In *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992), *cert. denied*, 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993), the en banc court recognized an independent claim based on cumulative error only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.' "    *Id.*, quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised.    *Derden*, 978 F.2d at 1461.

*Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (emphasis added); *see also Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) ("[W]here individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.' "); *Martinez Perez v. Dretke*, 172 F. Appx' 76, 83 (5th Cir. 2006) ("Obviously, if there was no error ... there

was no cumulative error." (emphasis in original)).    Here, Darby has not shown that any of his individual claims have merit and, therefore, he is not entitled to relief merely by cumulating those claims, especially when he has not established that the cumulative effect of the alleged errors rendered his trial fundamentally unfair.

**RECOMMENDATION**

**IT IS RECOMMENDED** that Darby's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[56]

New Orleans, Louisiana, this __14th__ day of _____ August _____ 2020.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[56] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.